MAGNESIUM CASTING CO., Plaintiff,
Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 6131.

United States Court of Appeals
First Circuit.

Oct. 24, 1963.

⊙⟶1141

Herman Leventhal, Boston, Mass., for appellant.

Earl J. Silbert, Attorney, Department of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter and Alec A. Pandaleon, Attorneys, Department of Justice, W. Arthur Garrity, Jr., U. S. Atty., and Murray H. Falk, Asst. U. S. Atty., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

The sole issue in this case is whether appellant taxpayer owes excise taxes, imposed by sections 3408(a) and 4201 of the 1939 and 1954 Internal Revenue Codes, respectively, for a number of years upon the manufacture or produc-

tion of mechanical cigarette lighters. The facts are these. Taxpayer purchases a mechanically complete lighter, hereinafter mechanism, in wholesale lots. Although complete and operable, the mechanism is structurally unfinished in appearance, and was obviously designed for insertion into some holder or other object. Taxpayer manufactures a decorative metal container, or base, designed to receive the mechanism. The mechanism and base together make, and are sold as, a desk or table lighter. The Commissioner ruled the final product to be taxable, but allowed a credit discussed below. Taxpayer paid the tax and sought its recovery in the district court. Failing there, it brings this appeal.

 Taxpayer contends that neither the manufacture of the base, nor the placing of the mechanism into it (an operation that can be done and undone instantly by anyone), constitutes the "manufacture or production" of "lighters" within the statute. We do not agree. The mechanism and base together, no matter how viewed, constitute a lighter and nothing else.[1] It is true that there was a lighter already in existence[2] befor appellants produced the article in question. This does not mean, however, that the effect of taxpayer's activities was not the production of a lighter, albeit

taxpayer's product was superior and more complex in character. Some of taxpayer's actions were unquestionably manufacturing.[3] An article is being manufactured through all of its stages, and this does not cease to be so simply because at an earlier stage it had already achieved the described status. If, for example, there were a tax on the manufacture of whiskey based upon its value, we cannot think that a distiller who aged his whiskey twelve years in the wood could say that since his product became merchandisable whiskey after four years he was thereafter no longer manufacturing, so that the worth as of that moment determined the tax.[4]

██ Nor can the accident that more than one person assisted in producing the final article affect the ultimate tax. Appellant argues that the government taxed the original manufacturer upon the mechanism, and that this was the end of the road. The government replies that this circumstance is of no consequence except to warrant appellant's receiving a credit for the amounts already paid. We concur to such an extent that it seems pointless to discuss the statutes which from time to time have dealt with aspects of seriatim and composite manufacturing of taxable articles except to say that they are less than helpful to appellant.[5]

1. The Commissioner does not contend that appellant incurs a tax in connection with another product where, instead of a simple base, it manufactures a large earthenware ashtray with a recess in which the mechanism may repose. There, essentially, appellant's activities result in the making of a (non-taxable) ashtray as distinguished from a better or more complex (taxable) lighter. The fact that to be entirely consistent the Commissioner might have sought to tax appellant for part of the value of the ashtray, and has not done so, does not, as appellant seems to suggest, estop it as to the product now under consideration.

2. We do not accept the district court's distinction that the original mechanism "is no more a lighter than is a filler or refill for ball point pens a ball point pen." No one could conveniently use a filler by itself, while the instant mechanism was

readily usable and complete except in the matter of appearance.

3. Cf. Select Imports, Inc. v. Campbell, D.C.N.D.Tex., 1961, 196 F.Supp. 181, in which the taxpayer assembled lighters from bases, which it imported, and mechanisms similar to those here. Appellant speaks of the assembly of "knock down" shipments. We need not decide to what extent more substantial assembly alone may fall within the statute. However, the regulations maintained this position for thirty years. See, e. g., Treas.Reg. 47, § 7 (1920); Treas.Reg. 46, § 316.4(a) (1940), superseded, insofar as presently material, T.D. 6454, 1960–1 Cum.Bull. 476.

4. Cf. Rev.Rul. 60–356, 1960–2 Cum.Bull. 328.

5. See, dealing with further manufacture resulting in another taxable article,

Manufacturing normally involves a division of labor. It cannot be important that it may also involve a division of title.

Judgment will be entered affirming the judgment of the District Court.

I.R.C. (1954) § 6416(b) (3) (A), (f) (formerly I.R.C. (1939) § 3443(a) (1)) providing for a credit or refund on account of tax paid by prior manufacturer, and I.R.C. (1954) §§ 4221–4223 (formerly I.R.C. (1954) § 4220, I.R.C. (1939) § 3442) providing, alternatively, for an exemption from tax, under implementing regulations, of the prior sale. See also Rev.Rul. 57–425, 1957–2 Cum.Bull. 720. This statutory scheme, several times amended in details unessential here, obviously looks forward to the payment of the whole tax upon the final taxable article while providing manufacturers certain options as to the mechanics and times of payment. Cf. Rev.Rul. 58–365, 1958–2 Cum.Bull. 809; Rev.Rul. 57–425, supra.